UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHOPIFY (USA), INC.,, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>EXPRESS MOBILE, INC.,<br><br>Defendant. | Case No. 19-mc-80251-TSH<br><br>**ORDER GRANTING MOTION TO QUASH SUBPOENA**<br>Re: Dkt. No. 1 |

## I. INTRODUCTION

The movant, Donald L. Bartels, filed this miscellaneous action seeking to quash a Subpoena to Testify at a Deposition served upon him in a patent infringement matter pending in the United States District Court for the District of Delaware. *See Shopify (USA), Inc., et al v. Express Mobile, Inc.*, Civil No. 19-439 (RGA). Bartels, an attorney, is a non-party to the underlying litigation. He moves to quash the subpoena on the grounds that he has no relevant information or documents and that deposing him would impose an undue burden. The Court finds this motion suitable for disposition without oral argument and **VACATES** the November 14, 2019 hearing. *See* Local Rule 7-1(b). For the reasons set forth below, the Court **GRANTS** the motion.

## II. BACKGROUND

On March 1, 2019, Plaintiffs Shopify Inc. and Shopify (USA), Inc. (collectively "Shopify") filed a complaint for declaratory judgment of non-infringement against Express Mobile, Inc. in the United States District Court for the District of Delaware. The complaint relates to several United States patents (the "patents-in-suit"), including U.S. Patent No. 6,546,397 (the "'397 Patent"), of which Express Mobile is the owner. Decl. of Laurie Edelstein ("Edelstein Decl.") ¶ 2, Ex. A ("Compl.") ¶¶ 11-18, ECF No. 3; Edelstein Decl. ¶ 3, Ex. B ("Answer") ¶¶ 11-

18. Express Mobile answered and asserted counterclaims for infringement of the patents-in-suit.

Bartels is a patent attorney, and from 1995 to 2005 was a partner at Coudert Brothers LLP. Edelstein Decl. ¶ 7, Ex. F ("Bartels Decl.") ¶ 6. In 2001, Steven Rempell, the inventor of the '397 patent, hired Coudert Brothers to prosecute the application (application number 09/454,061) which would eventually issue the patent. *See* Edelstein Decl. ¶ 9, Ex. H at XMO000806. The patent issued on April 8, 2003. On December 10, 2003, Bartels filed a Change of Correspondence Address with the Patent and Trademark Office ("PTO") regarding the '397 patent. Decl. of Whitney R. O'Byrne ("O'Byrne Decl.") ¶ 2, Ex. A, ECF No. 15-2. The filing listed Bartels' Coudert Brothers address as addressee. Bartels left Coudert Brothers in 2005 and became a partner at Nixon Peabody LLP, another law firm. Bartels Decl. ¶ 7. The three-year maintenance fee for the '397 patent was not timely paid when due on October 8, 2006, and on May 9, 2007, the PTO sent a notice of patent expiration addressed to Bartels' Coudert Brothers address. O'Byrne Decl. ¶ 3, Ex. B, ECF No. 15-3. On March 31, 2008, Steven Vosen, a patent agent who worked with Bartels at Coudert Brothers, filed a petition to revive the '397 patent. O'Byrne Decl., Ex. C, ECF No. 15-4. As part of the petition, Vosen certified that the delay in payment of the maintenance fee was unintentional, *id.*, but not before apparently speaking to someone at Bartels' new firm.

Shopify has subpoenaed Bartels and seeks testimony concerning the reasons for the lapse of the maintenance fee and subsequent revival of the '397 patent. *See* Edelstein Decl. ¶¶ 4, 6, Exhibits C, E. Bartels asserts that he has no personal, relevant knowledge on the '397 patent or reason for the maintenance fee lapse and moves to have the subpoena quashed.

### III.  LEGAL STANDARD

Federal Rule of Civil Procedure 45 governs discovery of non-parties by subpoena. The scope of the discovery that can be requested through a subpoena under Rule 45 is the same as the scope under Rule 34, which in turn is the same as under Rule 26(b). Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."). Rule 26(b) allows a party to obtain

2

discovery concerning any nonprivileged matter that is relevant to any party's claim or defense. Fed. R. Civ. P. 26(b)(1).

A party responsible for issuing a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena. Fed. R. Civ. P. 45(d)(1). The court is required to enforce this duty, particularly when a subpoena has been served upon a non-party to the litigation. *Id.*; *High Tech Medical Instrumentation, Inc. v. New Image Indus., Inc.*, 161 F.R.D. 86, 88 (N.D. Cal. 1995). On timely motion, a court must quash or modify a subpoena that:

(i) fails to allow a reasonable time to comply;

(ii) requires a person to comply beyond the geographical limits specified in Rule 45(c);

(iii) requires disclosure of privileged or other protected matter, if no exception or waiver applies; or

(iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A). Additionally, a court must limit discovery if it is duplicative or could be obtained from a more convenient or less burdensome source. *See Free Stream Media Corp. v. Alphonso Inc.*, 2017 WL 6209309, at *3 (N.D. Cal. Dec. 8, 2017). The moving party bears the burden of persuasion under Rule 45(d)(3), but the party issuing the subpoena must demonstrate the discovery sought is relevant. *Fujikura Ltd. v. Finisar Corp.*, 2015 WL 5782351, at *3 (N.D. Cal. Oct. 5, 2015) (quoting *Chevron Corp. v. Donziger*, 2013 WL 4536808, at *4 (N.D. Cal. Aug. 22, 2013)). "[T]he Ninth Circuit has long held that nonparties subject to discovery requests deserve extra protection from the courts." *High Tech*, 161 F.R.D. at 88 (citing *United States v. C.B.S.*, 666 F.2d 364, 371-72 (9th Cir. 1982)).

## IV. DISCUSSION

Bartels argues the subpoena should be quashed because he has no relevant documents and no relevant knowledge of this matter and because the burden of deposing him would outweigh the likely benefit. For its part, Shopify argues that the subpoena seeks relevant information, namely, whether Express Mobile's failure to pay the maintenance fee for the '397 patent was truly unintentional, which is relevant to the question of whether the '397 is enforceable against Shopify. Shopify argues that the Bartels has failed to show that responding to the subpoena would be

3

1  unduly burdensome. It also argues that Bartels' claimed lack of memory and documents is not

2  grounds to quash the subpoena.

3        A patent that expires for failure to pay maintenance fee can only be revived if the owner

4  establishes that they delayed payment was unintentional. 35 U.S.C. § 41(c)(1); 37 C.F.R. § 1.378.

5  Additionally, a patent is unenforceable if the owner engages in inequitable conduct by improperly

6  certifying to the Patent Office that the failure to pay maintenance fee was unintentional. *See In re*

7  *Rembrandt Technologies LP Patent Litigation*, 899 F.3d 1254, 1272-75 (Fed. Cir. 2018);

8  *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1285 (Fed. Cir. 2011) ("Inequitable

9  conduct is an equitable defense to patent infringement that, if proved, bars enforcement of a

10  patent."). Therefore, the issue of whether Express Mobile's failure to pay maintenance fee was

11  unintentional is relevant to the underlying infringement matter: if Shopify were able to show that

12  the failure to pay maintenance fee on the '397 patent was intentional, the patent might not be

13  enforceable. The question is whether Bartels is the person to go to for Shopify to get that

14  information.

15        Bartels asserts that he does not recall working on the '397 patent application and that he

16  does not recall working on any of the patents-in-suit. Bartels Decl. ¶ 6. He asserts that when he

17  left Coudert Brothers, Express Mobile was no longer his client, and that, to his knowledge,

18  Express Mobile did not transfer any files from Coudert Brothers to Nixon Peabody. *Id.* ¶ 7. He

19  asserts that he does not recall any maintenance fee payment deadline relating to the '397 patent or

20  any petition to revive the patent. *Id.* ¶¶ 8, 9. He also asserts that he has no knowledge or

21  recollection of any discussions with Vosen, the attorney who filed the petition reviving the '397

22  patent, regarding any maintenance fee payments or petitions related to the '397 patent. *Id.* ¶ 9.

23        Shopify points to Vosen's deposition testimony. Vosen testified that Bartels was one of

24  two attorneys he worked with at Coudert Brothers on the '397 patent application. O'Byrne Decl.,

25  Ex. F. ("Vosen Dep.") at 136:7-21, ECF 15-7. He testified that he had no personal knowledge

26  regarding why the maintenance fee was not paid on time. *Id.* at 166:9-167:17. He initially

27  testified that he spoke to Bartels or somebody at his firm about why the fee wasn't paid on time,

28

1  *id.* at 175:24-177:8[1], but then clarified that the person he spoke with was James Drapinski, *id.* at
2  177:11-22. Vosen testified that Drapinski told him that he attempted to contact Rempell
3  concerning the maintenance fee but was unsuccessful. *Id.* at 186:6-189:8. He testified that it was
4  his understanding, from talking to Drapinksi, that Drapinski and the firm were aware of the
5  maintenance fee due dates and that the they had attempted to contact Rempell about the due date.
6  *Id.* at 189:9-16. Vosen testified that he spoke to no one else about the abandonment of the '397
7  patent. *Id.* at 190:8-11.

Vosen never testified that he spoke to Bartels personally about the maintenance fee. He testified that he learned from Drapinski why the fee wasn't paid on time. *Id.* at 176:16-177:15. And although he testified that when he spoke to Drapinski, Drapinski worked at Bartels' firm, there's no evidence Drapinski spoke to Bartels about the maintenance fee either (Drapinski was also listed as an attorney of record for the '397 patent, Edelstein Decl. ¶ 9, Ex. H at XMO000807-08). Finally, to the extent Bartels did work on the '397 patent application while at Coudert Brothers, there is no evidence he was doing so in 2007, when the maintenance fee issue first arose. At that time, Bartels was no longer working at Coudert Brothers (the firm was apparently dissolved in 2005, https://www.nytimes.com/2007/02/09/business/09legal.html) and Express Mobile was no longer his client. Bartels Decl. ¶ 7. Put another way, Shopify has produced no evidence that Bartels worked with Express Mobile or on the '397 patent in 2007 and 2008, which are the relevant time periods, or that Bartels personally communicated with anyone about the reasons for which the maintenance fee was not paid on time. Against Bartels' declaration that he has no relevant knowledge of the maintenance fee issue, Shopify has not provided any evidence to indicate otherwise. It seems that, based on Vosen's testimony, Drapinski is the person better positioned to offer potentially relevant information. The Court finds that relevant in determining whether to grant Bartels' motion to quash. *See Audio MPEG, Inc. v. HP Inc.*, 2017 U.S. Dist. LEXIS 34913, *13-14 (N.D. Cal. Mar. 10, 2017) ("[B]ecause what relevant material there is could

---

[1] Vosen testified that Bartels had his "own firm" at the time he contacted someone about the fee, but Bartels apparently was a partner at Nixon Peabody at that time. Bartels Decl. Ex. 1. Vosen did not testify as to—and was not asked about—which firm he contacted.

be more easily obtained from other sources without causing a burden to non-party Apple, the court grants the motion to quash the subpoena as to categories one and two and all four deposition topics."); *Emhart Indus. v. Univar USA, Inc.*, 2009 WL 10675670, at *5 (limiting subpoena based in part on the fact that the party issuing subpoena made "no showing that the sought-after information cannot be obtained from a better source"); *MacDermid Printing Sols., L.L.C. v. E.I. Du Pont De Nemours & Co.*, 2012 WL 734146, at *3 (M.D.N.C. Mar. 6, 2012) (quashing non-party subpoena to testify and finding, "[i]n sum, the availability of the relevant information from another, better source makes the burden on [the non-party] unwarranted in this case"). And Shopify has in fact subpoenaed Drapinski. Opposition to Non-Party Donald L. Bartels' Mot. ("Opp'n") 3 n.2.

Shopify string cites several cases from other federal courts in support of its argument that Bartels has relevant information because he was a prosecuting attorney on the '397 patent. *See* Opp'n 6. None of those cases does the job, however, as they all involved prosecuting attorneys who were involved in the patent prosecution at the relevant time or were the only source for information sought. *Dura Operating Corp. v. Magna Int'l*, 2011 WL 869372, at *14 (E.D. Mich. Mar. 10, 2011) (attorney sought to be deposed personally signed "Petition to Accept Unintentionally Delayed Payment of Maintenance Fee in an Expired Patent"); *aaiPharma, Inc. v. Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 776 (N.D. Ill. Mar. 21, 2005) (attorneys at firm substantively involved in the prosecution of the patents in suit at the relevant times); *Environ Prod., Inc. v. Total Containment, Inc.*, 1996 WL 494132, at *4 (E.D. Pa. Aug. 22, 1996) (party sought to depose attorney-trial counsel who handled the reexamination proceeding about alleged inequitable conduct during the reexamination proceeding); *Genal Strap, Inc. v. Dar*, 2006 WL 525794 ("Raskin, as prosecution counsel, is the only source of information concerning his knowledge of other inventors and his mental impressions concerning the inventorship of the patents. . . . [B]ecause of his role in the patent prosecution, Raskin's deposition is crucial to Voguestrap's inequitable conduct defense."). In this case, Bartels was not representing Express Mobile when it failed to pay maintenance fee; Vosen filed the paperwork to revive the '397 patent and certified inadvertence; and Drapinksi was the individual who told Vosen why the fee had not

1 been paid.

2 Finally, Shopify cites *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 344 (S.D.N.Y. Aug. 2, 2002), for its proposition that Bartes' claimed lack of memory is not grounds to quash the subpoena. In *Alcon Labs*, the court wrote that an attorney's "declaration asserting his lack of non-privileged or non-protected information is not dispositive of the issue of whether he should be subject to a deposition[.]" *Id.* at 344. But in that case too, the subpoenaed attorney was subpoenaed for information relevant to the time the attorney worked on that patent. The deposing party subpoenaed the attorney "for a deposition on issues concerning inventorship of the [] patent and representations made [by the attorney] to the [PTO], including [his] written argument submitted to the PTO." *Id.* at 342. The court noted, "[the attorney's] name is the only one that appears on the face of the patent as an attorney. Thus, [he] is likely the only source for much of the information [sought] and the best source of the rest of the requested information because of his role in the prosecution of the patent." In this case, by contrast, Vosen was the attorney who signed the petition to revive the patent, and he testified that he spoke with Drapinski about the maintenance fee. And Bartels does not only assert lack of relevant information—he asserts that he no longer worked at the firm prosecuting the '397 patent at the relevant time. Lastly, Bartels' declaration alone is not dispositive here. Rather, the Court weighs Bartels' declaration along with the evidence suggesting he would not have the relevant information Shopify seeks, along with the availability of a witness better positioned to provide that information. Mindful also that non-parties subject to discovery requests "deserve extra protection from the courts," *High Tech*, 161 F.R.D. at 88, the Court will grant the motion to quash.

## V. CONCLUSION

Bartels' motion to quash the Subpoena to Testify at a Deposition is **GRANTED**.

**IT IS SO ORDERED.**

Dated: November 12, 2019

THOMAS S. HIXSON
United States Magistrate Judge

7